17-1996 Emond Logan v. USA. Oral argument, 15 minutes per side. Mr. Brandt for the appellate. May it please the court, good morning, Ms. Behrens. Jeff Brandt on behalf of Emond Logan. We have three related arguments before the court. I think that the core of the district court's holdings, which are the jumping off point, can be summarized as follows. The district court found that attorney Richard Zambon provided Mr. Logan good advice, advice to enter an early offered plea agreement for a 10-year sentence. And then the district court found that because at least one attorney gave Mr. Logan good advice, Mr. Logan could not recover relief despite the court's acknowledgment that he received prejudicially ineffective advice from attorney Leo Terrell. The problems in our three arguments we're asserting are number one, it isn't settled law that receiving effective assistance from one attorney means that you cannot recover from ineffective assistance. And I'll go into more and answer questions. Number two, instead it looks like from Strickland and other cases that we've cited in the brief, that it's a case-by-case analysis that yes, there are some circumstances where if you get some good advice over here and bad advice over here, there may be times that a defendant can recover. But third, this record does not show Mr. Zambon giving good advice, sign the plea agreement, enter the plea agreement. And therefore, under these particular circumstances where you have one attorney who's in the district court's words, abysmal, giving abysmal advice to get out of a plea agreement, go to trial, you'll be out in a day, we'll get you out of jail, versus no advice whether to sign or not sign. It looks like a good plea agreement to me, that on those facts, a defendant should be able to recover and obtain relief from ineffective assistance to counsel. On the first point, the district... Do you have any authority in support of your position? Which part? Just what you argued there. Okay, for the first part, the proposition that receiving good advice from one attorney is enough to prevent any ineffective assistance to counsel claim is simply not supported by the case law cited or any other cases that we've found. Every case is either saying something different or predates Lafleur and Frye, which calls this court's Sanzoso case into question, or is materially distinguishable on the facts. The facts here is we do have a... Unlike most of the cases cited, we have a retained attorney, Mr. Terrell, giving advice. This isn't just some of the cases talk about a second opinion. Just I ran and got a second opinion. Some of the cases don't even have that second opinion attorney saying, get out of the plea. The Martini, ineffective assistance to counsel argument is so weak. I understand why that defendant didn't obtain relief. He wasn't talking to a retained attorney. The person didn't even attempt to become counsel. And the attorney didn't say, get out of the plea agreement. The attorney simply said, it might be triable. That's not this case. This is a case of a defendant's father getting $100,000 out of his retirement account to pay an attorney who had motivation to get this client to go to trial with crazy false promises that I'll get you out. There's no way they'll get you. Get out of that plea agreement, where he had another attorney saying, it's a good plea agreement. Didn't say, sign. So we don't even have competing advice. We have, it's a good plea agreement. Maybe do it, maybe not. Versus, I'm going to get you out of prison, go to trial. As the district court judge noted, that's completely unreasonable. And it is prejudicial. It appears like there may be an open question because of Santos Suoso, the fact that that's not based on any Supreme Court case law. And because Lafleur and Frey have come out, as the district court noted, has come out and put into question Santos Suoso's idea that someone that's gotten good advice and bad advice can't later come back and get rid of their plea. That's simply not the case. Lafleur and Frey have shown us, yeah, you can, there are certain circumstances where you can go to trial. And we can find out that somebody didn't tell you about a plea agreement, that yeah, you can go to trial. Now, do we want to encourage that? No, and I'm not suggesting that at all, that that's a good idea, go to trial. But there have to be some circumstances where a defendant who's gotten some good advice, and that's not necessarily this case, can still recover and have Lafleur and Frey relief of getting that plea agreement reoffered. Even though there was some attorney on the side saying something different. We go through the Strickland standard and review. This case law from this circuit as well is clear that it's a case by case analysis. It's not a hard and fast, oh, he's not retained. Oh, it's not, there's no circumstance in which someone gives good advice and the other one gets bad advice. But most importantly, the district court's decision, which we think the law is unclear, and I think the district court may have assumed based on Santos, so it was clear, it was unclear. And even if it were clear, Attorney Zambon did not give advice saying, sign this plea. Is it your position that he was ineffective as well? Absolutely not. Absolutely not? Absolutely, we are not arguing that. So that's what I thought you were doing, that one attorney was effective, but the other was ineffective. One attorney, we are saying Mr. Zambon is effective, absolutely. At no point have we questioned that. There was no argument in the district court. We're not making that argument below. I tried to make it clear in the reply brief. We're saying Mr. Terrell is ineffective. And the fact that Mr. Zambon, better than saying he was effective, I'm going to say he was not ineffective, right? So Mr. Brand, should we place any weight on the fact that Attorney Terrell was not petitioned as an attorney of record at the time that he gave the bad advice? Did he have to already be counsel of record? He was retained and he had attempted to be counsel of record. Didn't he actually become counsel of record after he gave the petition of this advice about, you know, go to trial, I'll get you out? And it's an enticement really for the person to retain him. Very shortly after this advice, the district court admitted Mr. Terrell. But unlike all the cases cited where there's a distinction about retained or whether somebody's counsel of record, the district court in this case was absolutely clear that Mr. Terrell was there, existed, because Mr. Terrell had attempted to become counsel but was doing so late in the process. So the district court was aware of his involvement in the case. So unlike a lot of the cases... In this instance, because he was making preparations to become counsel, if he could get retained, you're saying that that obviates the timing issue? Yes. Yes. And it makes a difference when we look to these older cases from the Seventh Circuit and the Ninth Circuit, where those cases are saying, look, this attorney wasn't retained. This attorney wasn't trying to be counsel of record, wasn't counsel of record. It's the second opinion idea. And this case is very, very different. This isn't just a second opinion from an uncle's buddy's friend who happens to be an attorney. This is an attorney that's been paid $100,000 and has motivation to convince a defendant, go to trial. Because if you go to trial, he earns the money and unfortunately it happens. This is not the first case we've seen like this. There are attorneys that give bad advice to go to trial so that attorney makes money when the correct answer... And this court's great case law, post-Laffler and Frye, about the duties of an attorney to give good advice, go to trial or take a plea agreement, prevent that bad advice from going farther if, in a situation like this, that attorney that's giving the bad advice, the defendant can recover against that attorney, even if there's someone in the wings, in some circumstances, not this, giving good advice, but in this case, not giving conflicting advice. And that's what's different here. It's not just the law, which we would... It'd be great if the Sixth Circuit would give a published decision about, you know, along the lines of Santos-Suazo. But also make the distinction that, look, if there's good advice generally, you know, maybe think about it. See what you want to do. But on the other side, there's direct advice. Don't take that plea. Let's go to trial. I'm going to have you out. And that's what the transcript of the phone conversations that are in the record show. Mr. Terrell's saying, I'll get you out. Just don't fall for this trick. But Mr. Logan makes a decision. And, you know, the whole premise of ineffective assistance of counsel is people have a right to counsel. And if your counsel is so ineffective that, in effect, you don't have an attorney, then you're denied your Sixth Amendment right, because you're entitled to have an attorney. And here he gets advice, good advice, bad advice. And he comes to a decision. But it seems like he's got counsel. And he's been given the options. He knows what the law is. And he makes a decision. It's not like he's without counsel. You know, it's not the typical situation you have. Judge Griffin, if we remove Mr. Terrell's advice and go down the did he have counsel path, if we remove Terrell's bad advice and see if he's got counsel, even there he doesn't. It's still his decision. So he's given the options. And he makes a decision. And, you know. But, Your Honor, that's true in every one of these cases. In this court's case law that has followed, where we accept that sometimes the defendant's going to get advice and have to make the decision. In every single one of those cases where it's the defendant's decision at the end, we still hold attorneys responsible for their actions and find that they're ineffective if they're saying they're giving the wrong sentencing exposure. They're saying, hey, the maximum sentence is 20. It's still the. Yeah, isn't it that they would have such influence on him that he would be more likely to foul that advice. But here, when you have conflicting advice, I'm not so sure. And we're asserting that it's not really conflicting advice because you've got this overwhelming voice of I'm going to get you out of prison. We can do this. Don't sign it. Versus no advice one way or the other. It sounds like you're saying that the attorney went from actually advising the client to promoting his own self-interest and getting the person to agree so that the attorney would be enriched. I'm not only saying it, Your Honor. I think that the transcript of the three recordings that are in the record completely support that. And I failed to say that at the beginning that I attempted to reserve three minutes. I apologize for not reminding the court. Thank you. Good morning. Good morning. Sally Behrens on behalf of the United States. May it please the court. I'd like to spend just a minute discussing an argument that was raised in the appellant's reply brief regarding the government's obligation to file a cross-appeal in this case. So with the court's permission, the cross-appeal rule is simply that an appellate court may not alter judgment to benefit a non-appealing party. And it's only necessary or appropriate to file a cross-appeal where a party is seeking to enlarge its own rights under a judgment. Here, there's just one issue, whether Mr. Logan was denied his right to effective assistance of counsel. And the government prevailed on that issue below. And so it was not required to file a cross-repeal. I agree with you. Thank you, Your Honor. I'd like to move on then to the characterization that Mr. Logan makes of Mr. Zambon's advice. Mr. Zambon's advice was complete. No one disputes that Mr. Zambon gave all of the advice that is required at the plea stage. And I think it's important to come back to first principles in terms of what advice is required for someone to be effectively represented at the plea stage. They need to have the charges reviewed with them. They need to have the evidence discussed as it bears on the elements of the charges. They need to have the sentencing exposure explained. And the client needs to be apprised of all of the available options. And no one disputes that Mr. Zambon did that here. Instead, what Mr. Logan is arguing is that because Mr. Zambon testified that he told Mr. Logan that it was a very good plea agreement, that that was somehow not a recommendation to take the plea, and that somehow Mr. Zambon was required to do that in the face of Mr. Terrell's suggestion that Mr. Logan not take the plea. What matters in this case, though, is that Mr. Logan clearly took that advice as meaning he should sign the plea agreement. Mr. Logan stated in his affidavit... Even though he didn't specifically say take the agreement, he understood that statement as that he was advised to take it. Mr. Logan argued below and stated in his affidavit that he was advised by Mr. Zambon to take the plea. He argued that below to the district court. Even though he didn't say that specific words. Correct. That's the way he took it. Correct. That's kind of my understanding, though. Thank you. In addition, both the district court in this case and the assistant United States attorney at the change of plea hearing that never happened, they both advised Mr. Logan, you are not going to have this opportunity again. You are apprised at this moment that this is your last opportunity to take the C1C plea agreement. So in this case, not only do you have the lawyer telling Mr. Logan, Mr. Zambon telling Mr. Logan everything that is required under the Sixth Amendment, but you also have the court and the assistant United States attorney explaining the risk that Mr. Logan faces going forward. Risk and consequences of not doing so. So he's fully advised. He is fully advised. And next, I'd like to turn to the argument that Mr. Logan makes that Santos Suoso is somehow amended or no longer good law after Lafleur and Frye. The district court seemed to suggest that as well in its opinion. And it's not clear to me how that would be under Lafleur. There is an error in the law that is given to or that is stated to the defendant that invites him not to take the plea agreement. And in Frye, it was an uncommunicated plea agreement. But all that Lafleur and Frye stand for for the purposes of this case is the notion that a defendant is entitled to effective assistance of counsel at the plea negotiation stage. And clearly, Mr. Logan had effective assistance in the form of Mr. Zambon at that stage of the proceedings. I have been unable to find a case where a defendant in Mr. Logan's position has been awarded relief after having effective assistance of counsel, having a lawyer, his counsel of record, give him all of the necessary information, and then is able to shop around to another lawyer for competing advice, which many defendants want to do. Nobody wants to hear, you should take this deal and go to prison for 10 years. So it is a common or a human response to advice that is hard, hard to take to want to shop around for different advice. But after you've gotten a lawyer who told you exactly what the risks and potential rewards are of a plea agreement, you can't go shop for other advice and then use that to say that your Sixth Amendment rights were violated. But Ms. Behrens, well, you have a lay person, as you just said, who is required to make a meaningful decision in their best interest on advice of counsel. And how are they supposed to assess that advice when one licensed attorney tells you, this is a good deal, but it's going to land you in jail for 10 years. And we're looking at this now saying, yeah, he had counseled advice. It was good. And then some other attorney comes along, and I'm hearing feedback now, and tells this person, don't do it. I can walk you. So in that situation, obviously, I think it's human nature that the deal that says, you know, don't go to jail, go home, the lay person is going to obviously look at that deal and say that's in their best interest. So what do we do in a situation like that? How do we assess that when both of them are giving the person advice that's supposed to be in the client's best interest? It is worth noting in this case, first off, and I'll get to, I think, the broader question that you're asking in a second. But it is worth noting in this case that Mr. Turrell had just been denied his motion to appear as counsel. He'd just been excluded by the court. And that gave Mr. Logan some indication that Mr. Turrell's advice was going to be secondary to Mr. Zambon's. The court was concerned about a conflict of interest. And the fact that Mr. Turrell said on the record during that hearing that he hadn't appeared for six months because he was too busy and he wasn't able to give the case the time it deserved. So in this specific case, there were lots of reasons why Mr. Logan should have taken Mr. Turrell's advice with a grain of salt as compared to Mr. Zambon, his lawyer who had been there the entire six months prior to that and had been steadily meeting with him and discussing the evidence and giving him good advice. However, the broader question you're asking, I think more as a matter of what should the rule be, what should the law be, is that every single case that has addressed this type of issue has noted the fact that there is such a potential for abuse here. To have one lawyer who's your attorney of record, who gives you good advice, tells you all of the information that is appropriate to making your decision, and then you go out and chop around and see if you can find somebody else who will give you better advice. And that then insulates you down the road from an ineffective assistance of counsel claim. And here, it's important to remember exactly what the Sixth Amendment requires. The Sixth Amendment requires that you have counsel, that you have the information that is available, the apt information that is available to you. It doesn't require that you get good advice from every lawyer you consult. It doesn't give you the right to be represented by more than one lawyer. Even in a capital case, the courts have held that you're not entitled to representation by more than one lawyer. To the extent that the court considers looking at competing advice, there's an interesting case, Harrison v. Motley, which I believe Judge Griffin authored. And that's not a plea context, but that's in the context of a defendant who received competing advice about whether to call witnesses at trial or to testify on his own behalf. And in that case, what the court held was what the defendant is entitled to in terms of effective assistance of counsel that all the information be given to the defendant and that the defendant is able to make his or her own decision in making the decisions that they want to make about going forward. It's important too, I think, to remember that these are incredibly tactical decisions. Whether or not to take a plea agreement, whether or not there's the chance to provide additional cooperation that gets you a better deal down the road, whether the government's case will get better or worse. These are all things that are very easy to assess in hindsight and difficult to assess at the time. And that is why it is ultimately the defendant's choice when given the proper information about what the effects of his decision are to make a choice about going to trial or taking a plea agreement. All right, any questions? Any further questions, Judge Dunn? No, thank you. All right, thank you. Thank you, counsel. Rebuttal. Thank you, your honors. The district court held, quote, Logan received effective assistance of counsel from Zambon. That's all the Sixth Amendment of the Constitution required. That's page ID 10840. We submit that inciting Santos-Souza.  Santos-Souza says. Number two, that it would be helpful if the Sixth Circuit would have a published opinion on this that addresses everything since Lafler and Frye. The district court recognized that the last part of Santos-Souza that says you're not going to be able to recover if you plead guilty or go to trial and then we find out that there was bad advice, that's the part of Santos-Souza that definitely needs to be reviewed. After Lafler and Frye, because we now know that's not the case. But at the end, we have attorney Zambon testifying, I never tell a client what to do. And under these circumstances, and we talk about looking at the case law that supports taking Strickland and just looking at the overall advice that's being given. If we use that as a standard, if that could become the standard here where an attorney is not necessarily saying sign the plea agreement, but you have an attorney who is so motivated to get that person not to sign the plea agreement, justice is not served. If that defendant cannot make a claim of ineffective assistance at counsel against the attorney so motivated to get that person to go to trial. All right. Thank you. Anything further, Judge? All right. Thank you. Thank you, Your Honor. Case will be submitted. May call the next case.